IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

SIERRA CLUB and KENTUCKIANS
FOR THE COMMONWEALTH,

      Plaintiffs,

    v.                                         CIVIL ACTION NO. _____

LAUREL MOUNTAIN RESOURCES, LLC,

      Defendant.

**FILED VIA CM-ECF:  DECEMBER 27, 2011**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES**

**INTRODUCTION**

1.     This is an action for declaratory judgment and mandatory injunctive relief and for civil penalties against Defendant Laurel Mountain Resources, LLC ("Laurel Mountain" or "Defendant"), for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA") and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. ("SMCRA") at its Bear Hollow Mine in Johnson County, Kentucky, operating under SMCRA Permit Number 858-0231.

2.     As detailed below, Plaintiffs allege that, at that permitted mining operation, Defendant discharged and continues to discharge selenium—a pollutant designated as toxic by the U.S. Environmental Protection Agency, 40 C.F.R. § 401.15—into waters of the United States without a National Pollution Discharge Elimination System ("NPDES") Permit for that pollutant issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, in persistent violation

1

of Section 301 of the CWA, 33 U.S.C. § 1311.

3. Plaintiffs further allege that Defendant's unlawful discharges of selenium into the waters adjacent to its mine violate SMCRA, performance standards under the Kentucky Program, and the terms and conditions of Defendant's surface mining permit.

4. Finally, Plaintiffs allege that Defendant is in violation of Kentucky Program performance standards and surface mining permit conditions that require the installation, operation, and maintenance of adequate treatment facilities, in addition to sediment ponds, when necessary to prevent discharges that violate any state or federal law.

5. Prior to commencing this action, Plaintiffs sent a notice of intent to sue to Laurel Mountain.

## JURISDICTION AND VENUE

7. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizens' suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

8. On October 26, 2011, Plaintiffs gave notice of the violations and their intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the Kentucky Energy and Environment Cabinet ("the Cabinet"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).

9. More than sixty days have passed since notice was served and neither EPA, nor OSMRE, nor the Cabinet has commenced and diligently prosecuted a civil or criminal action to require compliance with the Clean Water Act or SMCRA. Moreover, neither EPA nor the Cabinet commenced an administrative penalty action under Section 309(g) of the CWA, 33

U.S.C. § 1319(g), or comparable state law to redress the violations prior to the issuance of Plaintiffs' notice letter.

10. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District. This action is properly filed in the Pikeville Division because the events or omissions giving rise to the claims occurred in that division.

## PARTIES

11. Laurel Mountain Resources, LLC, is a Kentucky Limited Liability Company, doing business in Johnson County, Kentucky. Its principal office is in Gilbert, West Virginia.

12. Laurel Mountain is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1291(19).

13. At all relevant times, Laurel Mountain owned and operated the Bear Hollow Mine in Johnson County, Kentucky, which is regulated by Kentucky Surface Mining Permit 858-0231, and which discharges pollutants from various outfalls subject to the limitations of KPDES Permit KY0106895.

14. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with approximately 600,000 members nationwide and approximately 5,000 members who belong to its Kentucky chapter, called the Cumberland Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry

out those objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in Kentucky.

15. Plaintiff Kentuckians For The Commonwealth ("KFTC") is a non-profit membership corporation organized under the laws of the Commonwealth of Kentucky, with its principal office in London, Kentucky, in Laurel County.  KFTC is a social, economic, and environmental justice organization with approximately 7,000 members statewide.  KFTC's purposes include promoting the participation of citizens in democratic institutions and promoting social justice and quality of life for all Kentuckians, including by addressing environmental harms that affect Kentucky citizens.

16. Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Laurel Mountain's unlawful discharges of pollutants. Two such members of Sierra Club are John Harlan Callis, III, and Richard M. Clewitt. Plaintiffs' members enjoy hiking near, observing wildlife in, photographing, and/or otherwise using the waters affected by Laurel Mountain's discharges, including Bear Hollow, Greer Branch, and certain tributaries thereof.  Plaintiffs' members refrain from those activities or enjoy them less because of Laurel Mountain's unlawful discharges. Plaintiffs' members are also very concerned about the impacts of pollution from Laurel Mountain's discharges on their friends living near the Bear Hollow Mine and on local wildlife.  If Laurel Mountain's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the Clean Water Act and SMCRA.

17. At all relevant times, Plaintiffs are and were "person[s]" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 33 U.S.C. § 1291(19).

///

## STATUTORY AND REGULATORY FRAMEWORK

### *Clean Water Act*

18. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

19. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

20. At all times relevant to this complaint, the State of Kentucky has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of Kentucky. Permits issued pursuant to that program are called Kentucky Pollution Discharge Elimination System (KPDES) Permits.

21. Holders of KPDES Permits are required to monitor their discharges for certain pollutants bimonthly and report those discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

22. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water. Unless otherwise specified, all Kentucky surface waters are designated for the uses of warm water aquatic habitat, primary contact recreation, secondary contact recreation, and domestic water supply. 401 KAR 10:026 § 5(2)(a).

23. The State of Kentucky has adopted both general narrative water quality standards

and pollutant-specific numeric water quality criteria. Water quality standards contain both designated uses and discharge limitations designed to achieve those uses.

24. By default, all waterways are "designated for the uses of warm water aquatic habitat, primary contact recreation, secondary contact recreation and domestic water supply," unless otherwise designated. 401 KAR 10:026 § 5(2)(a).

25. The narrative standard applicable to all surface waters mandates that Kentucky's waters "shall not be aesthetically or otherwise degraded by substances that . . . [i]njure, are chronically or acutely toxic to or produce adverse physiological or behavioral responses in humans, animals, fish, and other aquatic life." 401 KAR 10:031 § 2(1)(d).

26. Additionally, Kentucky has established numeric criteria for the toxic pollutant selenium at levels necessary to protect warm water aquatic habitat. The acute criterion is 20 µg/l (micrograms per liter) and the chronic criterion is 5 µg/l. 401 KAR 10:031 § 6, Table 1.

27. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of  . . . an effluent standard or limitation under this chapter."

28. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

29. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1319(d).  See 33 U.S.C. § 1365(a).

30. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who

violates Section 301 of the CWA, 33 U.S.C. § 1311, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

31. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. See 40 C.F.R. § 19.4.

32. Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

### *Surface Mine Control and Reclamation Act*

33. Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from an approved state regulatory authority.

34. At all relevant times, the State of Kentucky has administered an approved surface mining regulatory program. See 30 C.F.R. § 917.10. These laws, codified in Chapter 350 of the Kentucky Revised Statutes, are collectively known as the "Kentucky Program."

35. The rules promulgated under the Kentucky Program provide that, as a general condition of all surface mining permits, the permittee must comply with all applicable performance standards. 405 KAR 8:010 § 18.

36. Several performance standards in the Kentucky Program require that all mining activities be conducted in compliance with state and federal water quality standards.

37. Among the performance standards mandated by the Kentucky Program is that "[i]n no case shall federal and state water quality statutes, regulations, standards, or effluent

7

limitations be violated." 405 KAR 16:060 § 1(3).

38. The Kentucky Program's performance standards also mandate that "[d]ischarges of water from areas disturbed by surface mining activities shall at all times be in compliance with all applicable federal and state water quality standards." 405 KAR 16:070 § 1(1)(g).

39. The Kentucky Program's performance standards also mandate that "[s]urface water quality shall be protected by handling earth materials, groundwater discharges, and run-off in a manner that . . . [w]ill not cause or contribute to a violation of any federal or state effluent limitations or water quality standards." 405 KAR 16:060 § 6(1)(c).

40. The Kentucky Program's performance standards further mandate that "[a]dequate facilities, in addition to sedimentation ponds, shall be installed, operated, and maintained to treat any water discharged from disturbed areas when necessary to ensure that the discharge complies with all federal and state laws and regulations and the limitations of this administrative regulation." 405 KAR 16:070 § 1(2).

41. The Kentucky Program's performance standards further require that "[i]f drainage control, restabilization and revegetation of disturbed areas, diversion of run-off, mulching, or other reclamation and remedial practices are not adequate to meet the requirements of this section and 405 KAR 16:070, the operator shall use and maintain the necessary water-treatment facilities or water quality controls for as long as treatment is required under this chapter." 405 KAR 16:060 § 6(2).

42. Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person having an interest which is or may be adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

43. Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award

8

the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

## FACTS

### *Laurel Mountain's Permits*

44. At all relevant times, Laurel Mountain has held Surface Mining Permit 858-0231 to operate the Bear Hollow Mine.

45. At all relevant times, Laurel Mountain has held KPDES Permit KY0106895 for its Bear Hollow Mine.

46. KPDES Permit KY0106895 authorizes the discharge of certain pollutants to an unnamed tributary of Bear Hollow and to Greer Branch. Those streams and their tributaries are waters of the United States and have been designated as warm water aquatic habitat for the purpose of Kentucky's water quality standards.

### *Laurel Mountain's Discharges of Selenium*

47. In the summer of 2010, Laurel Mountain applied to modify KPDES Permit KY0106895. As part of that process, Kentucky Division of Water ("KDOW") required Laurel Mountain to submit an effluent characterization of its existing discharges in the watersheds affected by the modification. The effluent characterization revealed that both of the representative outfalls identified by Laurel Mountain—SS1 and SS3—are discharging selenium into the streams that receive effluent from those outfalls—an unnamed tributary of Bear Hollow and Greer Branch, respectively. The dates of Laurel Mountain's unpermitted discharges and the selenium concentrations discharged are set out in the following table:

///

///

| SAMPLING DATE | LOCATION | SELENIUM CONCENTRATION |
|---|---|---|
| January 14, 2011 | SS-1 | 18 µg/l |
| February 11, 2011 | SS-1 | 23 µg/l |
| February 25, 2011 | SS-1 | 16 µg/l |
| March 15, 2011 | SS-1 | 50 µg/l |
| January 14, 2011 | SS-3 | 43 µg/l |
| January 28, 2011 | SS-3 | 10 µg/l |
| February 26, 2011 | SS-3 | 8 µg/l |
| March 15, 2011 | SS-3 | 13 µg/l |

48. In the application process to modify KPDES Permit KY0106895, Laurel Mountain stated that discharges from SS-1 and SS-3 are representative of other discharges from the Bear Hollow Mine. Thus, Plaintiffs believe and assert that all discharges regulated by KPDES Permit KY0106895 carry selenium into the streams surrounding the Bear Hollow Mine, in violation of Section 301 of the Clean Water Act and the performance standards under SMCRA.

*Plaintiffs' 60-Day Notice Letter*

49. Plaintiffs sent a notice of intent letter ("NOI"), postmarked on October 26, 2011, to Laurel Mountain notifying it that its pollutant discharges violate the Clean Water Act, SMCRA, and its Kentucky Surface Mining Permit 858-0231.

50. The NOI also notified Laurel Mountain of Plaintiffs' intent to sue the company for those violations at the end of the 60-day period required by statute.

51. The NOI was sent by certified mail, return receipt requested, to the following persons: Gary G. White, Manager of Laurel Mountain Resources, LLC; Dr. Len Peters,

10

Secretary of the Kentucky Energy and Environment Cabinet; R. Bruce Scott, Commissioner of Department for Environmental Protection, Kentucky Energy and Environment Cabinet; Sandy Gruzesky, Director of the Division of Water, Kentucky Energy and Environment Cabinet; Gwen Keyes Fleming, Regional Administrator of EPA Region IV; Lisa P. Jackson, Administrator of EPA; Ken Salazar, Secretary of the United States Department of Interior; Joseph Pizarchik, Director of the Office of Surface Mining; Joseph L. Blackburn, Director of the Lexington Field Office of the Office of Surface Mining; Thomas Shope, Director of the Appalachia Regional Office of the Office of Surface Mining; Jack Conway, Attorney General for the Commonwealth of Kentucky; and CT Corporation System, Registered Agent for Laurel Mountain Resources, LLC.

**FIRST CLAIM FOR RELIEF**
(Clean Water Act Violations Related to Unpermitted Selenium Discharges)

52. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 51 supra.

53. Plaintiffs' selenium discharges identified in the above paragraphs are discharges from a point source or sources into a navigable water of the United States within the meaning of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), which prohibits the discharge of any pollutant by any person, except in compliance with a permit.

54. Laurel Mountain's KPDES Permit KY0106895 does not authorize the discharge of selenium, as required for a legal discharge by Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

55. Under Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), an unlawful act under Section 301 is an "effluent standard or limitation" subject to enforcement through the citizen suit provision at Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1).

56. The discharges identified in paragraph 47 constitute eight separate violations of

11

Section 301(a) of the Clean Water Act.

57. On information and belief, Plaintiffs allege that Laurel Mountain is in continuing or intermittent violation of the Clean Water Act as a result of ongoing selenium discharges because Laurel Mountain has taken no meaningful action to eradicate the underlying cause of the discharges or to obtain a permit for the discharges.

58. Unless enjoined, Laurel Mountain will remain in continuing or intermittent violation of the Clean Water Act.

59. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Laurel Mountain is liable for civil penalties of up to $37,500 per day for its violations of Section 301 of the CWA, 33 U.S.C. § 1311.

## SECOND CLAIM FOR RELIEF
(SMCRA Violations Related to Unpermitted Selenium Discharges)

60. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 59 supra.

61. Under 405 KAR 8:010 § 18, all performance standards are incorporated as conditions in permits issued under the Kentucky Program.

62. The Kentucky Program performance standard at 405 KAR 16:060 § 1(3) prohibits any surface mining activities that cause a violation of State or Federal water quality laws.

63. Section 301(a) of the Clean Water Act is a Federal water quality law.

64. As alleged above in Plaintiffs' First Claim for Relief, paragraphs 52 through 59, Laurel Mountain has discharged selenium without a permit, in violation of Section 301(a) of the CWA.

65. Consequently, Laurel Mountain has violated the Kentucky Program performance standard at 405 KAR 16:060 § 1(3).

66. Because all performance standards are incorporated as permit conditions, Laurel

Mountain has also violated the terms and conditions of its Kentucky Surface Mining Permit 858-0231.

67. On information and belief, Plaintiffs allege that Laurel Mountain is in continuing or intermittent violation of SMCRA, the Kentucky Program, and Permit 858-0231 as a result of its selenium discharges in violation of Section 301(a) of the CWA because Laurel Mountain has taken no meaningful action to eradicate the underlying cause of the violations.

68. Unless enjoined, Laurel Mountain will remain in continuing or intermittent violation of SMCRA, the Kentucky Program, and Permit 858-0231.

**THIRD CLAIM FOR RELIEF**
(SMCRA Violations Related to Violations of Selenium Water Quality Standards)

69. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 68 supra.

70. As discussed above, the Kentucky Program performance standards at 405 KAR 16:060 § 6(1)(c) and 405 KAR 16:070 § 1(1)(g) prohibit pollutant discharges that cause or contribute to violations of State water quality standards.

71. Kentucky has a chronic selenium aquatic life standard of 5 µg/l and an acute selenium aquatic life standard of 20 µg/l.

72. Laurel Mountain has discharged selenium at levels that exceed Kentucky's acute and/or chronic aquatic life water quality standard.

73. On information and belief, Plaintiffs allege that those discharges caused or contributed to violations of one or both of the aquatic life selenium water quality standards in their respective receiving streams.

74. Consequently, on information and belief, Plaintiffs allege that Laurel Mountain has violated the Kentucky Program performance standards at 405 KAR 16:060 § 6(1)(c) and 405 KAR 16:070 § 1(1)(g).

75. Because those performance standards are permit conditions, Laurel Mountain has also violated the terms and conditions of its Kentucky Program Permit 858-0231.

76. On information and belief, Plaintiffs allege that Laurel Mountain is in continuing or intermittent violation of SMCRA, the Kentucky Program, and Permit 858-0231 as a result of its selenium discharges that cause or contribute to violations of Kentucky water quality standards because Laurel Mountain has taken no meaningful action to eradicate the underlying cause of the violations.

77. Unless enjoined, Laurel Mountain will remain in continuing or intermittent violation of SMCRA, the Kentucky Program, and Permit 858-0231.

## FOURTH CLAIM FOR RELIEF
(SMCRA Violations Related to Failure to Install Adequate Treatment Facilities)

78. Plaintiffs Club incorporate by reference all allegations contained in paragraphs 1 through 77 supra.

79. As discussed above, the Kentucky Program performance standards at 405 KAR 16:060 § 6(2) and 405 KAR 16:070 § 1(2) require the installation, operation, and maintenance of adequate treatment facilities, in addition to sediment ponds, when necessary to prevent discharges that violate any state or federal law.

80. As described above, Laurel Mountain's discharges of selenium have resulted in numerous violations of the Clean Water Act, SMCRA, the Kentucky Program, and Permit 858-0231, demonstrating the company's failure to install, operate, and maintain adequate treatment facilities.

81. Consequently, Laurel Mountain has violated the Kentucky Program performance standards at 405 KAR 16:060 § 6(2) and 405 KAR 16:070 § 1(2)

82. Because those performance standards are permit conditions, Laurel Mountain is also in violation of the terms and conditions of its Kentucky Program Permit 858-0231.

83. On information and belief, Plaintiffs allege that Laurel Mountain is in continuing violation of SMCRA, the Kentucky Program, and Permit 858-0231as a result of its failure to install, operate, and maintain adequate treatment facilities.

84. Unless enjoined, Laurel Mountain will remain in continuing violation of SMCRA, the Kentucky Program, and Permit 858-0231.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1). Declaring that Laurel Mountain has violated and is in continuing violation of the Clean Water Act and SMCRA;

(2). Enjoining Laurel Mountain from operating its facilities in such a manner as will result in further violations of the Clean Water Act and SMCRA, including unpermitted discharges and discharges in violation of water quality standards;

(3). Ordering Laurel Mountain to immediately apply for an individual KPDES permit for its selenium discharges;

(4). Ordering Laurel Mountain to immediately comply with the terms and conditions of its Surface Mining Permit 858-0231, including all applicable performance standards;

(5). Ordering Laurel Mountain to immediately begin installation of treatment facilities adequate to prevent violations of state and federal law;

(6). Ordering Laurel Mountain to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(7). Ordering Laurel Mountain to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and to restore the environment to its prior uncontaminated condition;

(8). Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(9). Granting other such relief as the Court deems just and proper.

          Respectfully submitted,

          **/s/ Benjamin A. Luckett**
          BENJAMIN A. LUCKETT (WV Bar No. 11463)
          (Motion to Appear *Pro Hac Vice* Pending)
          Appalachian Mountain Advocates
          P.O. Box 507
          Lewisburg, WV 24901
          (304) 645-0125
          bluckett@appalmad.org

          *Counsel for Plaintiffs*